CAMILLE DEWINNE ET UX V. WILLIAM ALLEN, BY AND THROUGH HIS GUARDIAN AD LITEM, EDGAR PFEIL

No. A-4787. Decided March 23, 1955.
Rehearing denied April 20, 1955.
(277 S.W. 2d Series 95)

318

*Baskin, Casseb & Casseb, Solomon Casseb, Jr.,* and *John M. Gilliland,* all of San Antonio, for petitioners.

The Court of Civil Appeals erred in not ruling on petitioners point of error that the evidence was sufficient to require the submission of issues on proper lookout and that the cause should be remanded to the trial court for a new trial because the judgment based thereon is against the great weight of the evidence. In re King's Estate, 244 S.W. 2d 660; Texas Emp. Ins. Assn. v. Moran, 261 S.W. 2d 855; Jennison v. Darneille, 146 S.W. 2d 788.

*Glosserman & Pfeil, Edgar Pfeil, Moursund, Ball, Bergstrom & Barrow and W. B. J. Ball,* all of San Antonio, for respondents.

MR. JUSTICE WALKER delivered the opinion of the Court.

Petitioners, Mr. and Mrs. Camille DeWinne, instituted suit against respondent, William Allen, for damages resulting from a collision between the automobile driven by Mr. DeWinne and in which Mrs. DeWinne was a passenger and the automobile operated by the respondent. The jury found the respondent failed to keep a proper lookout and was negligent in traveling the wrong direction on a one-way street, and that his negligence in each respect was a proximate cause of the collision. In answer to Special Issues Nos. 17 and 18, the jury also found that Mr. DeWinne failed to keep a proper lookout and that such failure was a proximate cause of the collision. On proper motion by petitioners to disregard the jury's answers to Special Issues Nos. 17 and 18, the trial court rendered judgment for the petitioners notwithstanding the verdict. The Court of Civil Appeals concluded that there is evidence to support the findings of contributory negligence and proximate cause and reversed and remanded the case with instructions. 268 S.W. 2d 677.

■ Petitioners' points Nos. 4 to 15, inclusive, assert in various ways the absence of evidence to support the jury's answers to Special Issues Nos. 17 and 18. After a careful consideration of all the evidence, and viewing the same in the light most favorable to the verdict, we have concluded that these issues were raised by the evidence and that the trial court erred in disregarding the jury's answers thereto.

The collision occurred at the intersection of two one-way streets in San Antonio: Houston Street, which extends and on which traffic is required to move from west to east, and San Saba Street, which extends and on which the traffic is required to proceed from south to north. Each street is approximately 38 feet in width. A stop sign required traffic going north on San Saba to stop before entering Houston. There was no traffic control at the intersection for vehicles on Houston. Petitioners were driving east on Houston and respondent was going south on San Saba, each vehicle traveling at approximately 20 miles per hour. It was night, and the lights on both automobiles were burning. Mr. DeWinne testified that he knew San Saba was a one-way street and was expecting traffic to come only from his right; that a bus was stopped at the stop sign on San Saba Street and another car was approaching the intersection from the south; that prior to the collision he glanced to the left, but that "I couldn't see a block away from there * * * he could be a block away from there when I glanced"; that there is a difference between glancing and looking; that a glance is a quick eye-swing to the left; that he glanced to the left and looked to the right; that he concentrated on the right-hand side and was looking to the right; that he looked at his speedometer just before the accident happened; that he saw no traffic other than the bus and car to his right; that he did not see respondent's car until after the collision; that if he had turned to the right before the collision he would have run into the bus; that the force of the collision turned him to the right; that his car was in good running condition and that he could have stopped instantly. Respondent testified that San Saba is wide enough for four lanes of traffic; that he was traveling in the left of the two lanes on his right side of the street; and that after his car had entered the intersection he saw the DeWinne vehicle and turned his wheels to the left in an effort to avoid a collision. The initial impact was between the left front of petitioners' vehicle and the right front of respondent's car. The police accident investigator, who arrived at the scene a short time after the collision occurred, testified that from the debris on the street he located the point of impact at 12 feet east of the west curb

line of San Saba and eight feet north of the south curb line of Houston Street.

■ It is well settled that a person is not bound to anticipate negligent or unlawful conduct on the part of another. Texas & N. O. R. Co. v. Brannen, 140 Texas 52, 166 S.W. 2d 112; Seinsheimer v. Burkhart, 132 Texas 336, 122 S.W. 2d 1063; Minugh v. Royal Crown Bottling Co., Texas Civ. App., 267 S.W. 2d 861, wr. ref. In the absence of knowledge to the contrary, therefore, Mr. DeWinne was entitled to assume that no vehicles were traveling in a southerly direction on San Saba Street, and was under no duty to look to the north for the purpose of ascertaining whether or not a vehicle was approaching the intersection from that direction.

It does not, however, necessarily follow that as a matter of law Mr. DeWinne kept a proper lookout. Every person proceeding along or across a public street is under the duty at all times to maintain a proper lookout for his own safety, and may not proceed blindly and in disregard of dangers that might reasonably be anticipated to exist. Blunt v. H. G. Berning, Inc., Texas Civ. App., 211 S.W. 2d 773, wr. ref. Brown v. Dallas Ry. & Terminal Co., Texas Civ. App., 226 S.W. 2d 135, wr. ref. It cannot be said that the only peril which reasonably might have been anticipated by Mr. DeWinne under the circumstances would necessarily have arisen from events occurring or conditions existing to his right. The fact that petitioners were approaching the intersection of two one-way streets and that danger would more likely arise from vehicles to their right did not eliminate the possibility of their encountering pedestrians, street defects or other conditions creating a situation of peril. The jury was entitled to infer from Mr. DeWinne's testimony that his glance to the left was not an observant look and may have occurred when petitioners were some distance from the intersection, and that he thereafter looked only to the right and at his speedometer. The testimony of the investigating officer as to the location of the point of impact and the evidence as to the width of the streets and the speed of the vehicles indicate that when respondent's car entered the intersection petitioners' automobile was some 18 feet west of the intersection, and that respondent was almost in the middle of the intersection when petitioners reached the west line of San Saba Street. Considering the location of the point of impact and the fact that Mr. DeWinne did not turn to the right before the collision, it appears that petitioners were driving in the south lane of Houston Street. Since respondent was traveling well out in San Saba

Street, his car was visible to petitioners for a short time before either vehicle entered the intersection. In view of his comparatively low rate of speed and the fact that his car was in good condition, Mr. DeWinne certainly could have stopped promptly.

The jury may have concluded: (1) that under the circumstances a reasonably prudent person would not have directed his gaze exclusively to the right, but would also have looked directly ahead and possibly to the left, and would not have been looking at his speedometer as he approached or entered the intersection; and (2) that if Mr. DeWinne had maintained a proper lookout, the respondent's vehicle with his lights burning would have been in Mr. DeWinne's field of vision to such an extent and at such a time that he would have become aware of the other car and have been able to stop and avoid the collision. We are unable to say that all reasonable minds would necessarily reach contrary conclusions.

■ Petitioners insist, however, that the testimony of the investigating officer as to the location of the point of impact is destroyed by his other testimony and is not evidence of probative force to support the jury's findings. The witness, who had considerable experience in accident investigation, was offered by the petitioners and testified positively at several different times as to the location of the point of impact, and said "that was where debris was scattered over the street." This was clearly evidence of probative force from which the jury could conclude that the collision occurred at or near the point indicated. The other testimony of the witness that he did not see the collision, that it could have occurred elsewhere in the intersection, that the force of the collision could have thrown the debris south and west of the point of impact, and that his location of the point of impact was an approximation, went to the weight, but did not destroy the probative force, of his testimony as to the location of the point of impact.

■ Petitioners also contend that respondent is bound by his own testimony as to the location of the point of impact. The respondent testified that the vehicles entered the intersection at approximately the same time, that Mr. DeWinne was nearly as far in the intersection as he was, and that if he had to locate the point of the collision he would say it was somewhere around the center of the intersection. He also stated repeatedly that he did not know exactly where the collision occurred. The respondent is not judicially bound by his statement as to the approxi-

mate location of the point of impact in the face of his repeated assertions that he did not know exactly where it was. A party is not necessarily bound to a fact which he admits only by way of opinion. Petit v. Klinke, 152 Texas 142, 254 S.W. 2d 769.

■ The brief of petitioners as appellees in the Court of Civil Appeals presented two cross-points of error: (1) that the answers of the jury to Special Issues Nos. 17 and 18 were against the great weight and preponderance of the evidence, and (2) that in any event the case should be reversed and remanded to permit petitioners to file a motion for new trial asserting jury misconduct. Having concluded that there is evidence of probative force to support the jury's answers to Special Issues Nos. 17 and 18, the Court of Civil Appeals reversed and remanded the case to the trial court with instructions to render judgment on the verdict and permit petitioners to file a motion for new trial on grounds of jury misconduct. By their first three points of error in this court, petitioners contend that the Court of Civil Appeals erred in failing to rule upon, in wrongfully applying the law to, and in failing to sustain, petitioners' cross point of error that the jury's answers to Special Issues Nos. 17 and 18 were against the great weight and preponderance of the evidence. We have concluded that the Court of Civil Appeals erred in failing to permit petitioners to assert in their motion for new trial that the answers of the jury to Special Issues Nos. 17 and 18 are contrary to the great weight and preponderance of the evidence.

Prior to the adoption of the Rules of Civil Procedure, when the appellate court concluded that the trial court had erred in rendering a judgment notwithstanding the verdict, the cause was remanded with instructions to enter judgment on the verdict, and the case then proceeded as if the district court had originally entered the judgment directed by the appellate court. The losing party might present his motion for new trial, which the trial court could grant or refuse, and in the latter event, the losing party was entitled to his appeal. McAfee v. Travis Gas Corp., 137 Texas 314, 153 S.W. 2d 442.

■ This practice was changed by the following provision of Rule 324 of the Rules of Civil Procedure:

"* * * When judgment is rendered non obstante veredicto or notwithstanding the finding of the jury on one or more special issues, the appellee may complain of any prejudicial error committed against him over his objection on the trial. A motion

for new trial shall not be necessary in behalf of appellee where he does not complain of the judgment or a part thereof."

Shortly after the Rules of Civil Procedure became effective, this court stated in LeMaster v. Fort Worth Transit Co., 138 Texas 512, 160 S.W. 2d 224, 227, that the above provision of Rule 324 would be interpreted "* * * to mean that where on appeal the appellate court determines that judgment non obstante veredicto was erroneously entered, such court will reverse the judgment of the trial court and enter judgment in harmony with the verdict, unless the appellee is able to present such error against himself as would have prevented an affirmance of the judgment had one been entered by the trial court in harmony with the verdict. * * *" This interpretation has been quoted and approved in other decisions by this court. International Printing Pressmen, etc. v. Smith, 145 Texas 399, 198 S.W. 2d 729; Sanders v. Harder, 148 Texas 593, 227 S.W. 2d 206. We reaffirm such interpretation with respect to errors of the trial court in ruling on the pleadings, evidence, objections to the charge, argument of counsel or any other matter within the language of Rule 324.

■ A question of jury misconduct or great weight and preponderance of the evidence can be raised in the trial court only in a motion for new trial, which comes after the entry of judgment adverse to the party raising such questions. In a judgment notwithstanding the verdict situation, the appellee has had no occasion or opportunity to raise in the trial court a question of jury misconduct or great weight and preponderance of the evidence, and there could not have been "any prejudicial error committed against him over his objection on the trial" with respect to such matters.

Respondent argues that the quoted provision of Rule 324 limits the appellee's complaints to errors committed against him on the trial, and hence places a litigant on notice that he must waive the right to complain of other matters if he elects to seek and obtains a judgment notwithstanding the verdict. We have concluded that the rule is not subject to this interpretation. A motion for judgment notwithstanding the verdict is not inconsistent with a subsequent contention that the verdict is contrary to the great weight and preponderance of the evidence or that the jury has been guilty of misconduct. We should not by a strained interpretation of the rule require a litigant to forego these important rights if he moves for and obtains a judgment notwithstanding the verdict.

■ The purpose of the rule is to aid in the speedy dispatch of litigation by requiring that matters attacking both the verdict and the judgment non obstante shall be disposed of in one appeal. The requirement of a remand to the trial court on a question of jury misconduct or great weight and preponderance of the evidence will defeat this purpose to some extent. If the trial court concludes that a new trial should not be granted, there may be a second appeal in which the Court of Civil Appeals is called upon to decide a question which it might have considered and passed upon in the first appeal. We have concluded, however, that these considerations afford no justification for applying Rule 324 to a situation which does not come within its provisions. A remand to the trial court for the consideration of any matter upon which that court has not passed seems to be more in harmony with our concept of the role of the trial judge and the theory of appellate review. We hold, therefore, that in an appeal from a judgment notwithstanding the verdict if the appellee raises by cross points of error questions of great weight and preponderance of the evidence, jury misconduct or other matters which can be presented only in a motion for a new trial, or otherwise informs the appellate court in his brief that he wishes to file a motion for new trial to present such matters to the trial court, the appellate court, in the event it concludes that the trial court erred in rendering judgment notwithstanding the verdict, will reverse and remand the case to the trial court with instructions to enter judgment on the verdict and permit the appellee to file a motion for new trial for the limited purpose of complaining of matters which are thus called to the attention of the appellate court and which could not have been previously presented to and ruled upon by the trial court. Any statements in our former opinions are overruled to the extent they conflict with this holding.

The judgment of the Court of Civil Appeals is modified and the judgment of the trial court is reversed and the cause is remanded to the trial court with instructions to enter judgment upon the verdict of the jury and to permit the petitioners to file a motion for new trial for the limited purpose of asserting: (1) that the answers to the jury to Special Issues Nos. 17 and 18 are contrary to the great weight and preponderance of the evidence, and (2) jury misconduct.

Opinion delivered March 23, 1955.

Rehearing overruled April 20, 1955.